UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------x
Narval Narcissi

                       Petitioner,

   - against -

Superintendent William Mazzuca,[1]
*Fishkill Correctional
Facility*,

                Respondent.
--------------------------------------------------x

OPINION
AND ORDER
05 CV 5710 (NG)

GERSHON, United States District Judge:

     On May 8, 2001, petitioner Narval Narcissi was convicted, following trial by jury, of Criminal Possession of a Weapon in the Second Degree (New York Penal Law ("Penal Law") § 265.03(2)).  Narcissi is serving a determinate term of imprisonment of 15 years to be followed by two and a half years of post-release supervision.  Now before this court is Narcissi's writ of habeas corpus pursuant to 18 U.S.C. § 2254 challenging his conviction based upon ineffective assistance of appellate counsel.  For the reasons set forth below, the petition is denied.

## BACKGROUND

     The evidence at trial established that petitioner, along with three other men, planned to commit a robbery.  While planning the robbery in a car, petitioner shot one of his confederates, Hugh McCalla.  Petitioner fled New York, ultimately arriving in Toronto, Ontario, where he was arrested on September 27, 1999 by Constable Bishop of the Toronto Police.

### *Pretrial Proceedings*

     Petitioner was charged with two counts of Murder in the Second Degree (Penal Law § 125.25

---

[1]  Caption amended to reflect the name of the current superintendent at Fishkill Correctional Facility.

(1), (2)); one count of Attempted Murder in the Second Degree (Penal Law §§ 110, 125.25 (1)); two counts of Criminal Possession of a Weapon in the Second Degree (Penal Law § 265.03 (2)), one for a .357 Magnum and one for a .380 pistol; and two counts of Criminal Possession of a Weapon in the Third Degree (Penal Law § 265.02).

On October 15, 1999, during a conference before the Honorable Jeffrey Lebowitz of the Queens County Criminal Court, David Cohen, Esq., who was representing Narcissi, stated, "I just had an opportunity to speak to [Narcissi] and go over the complaint and charges, and he has indicated to me that he does not want to testify in front of the grand jury . . . ." (Prelim. Conference Tr. 3, Oct. 15, 1999.)  The grand jury indicted Narcissi.  On December 17, 1999, petitioner moved, pursuant to New York Criminal Procedure Law ("CPL") § 190.50(5)(a), to dismiss the indictment on the ground that he had been deprived of his statutory right to testify before the grand jury.  On February 7, 2000, Judge Hanophy of the New York State Supreme Court, Queens County, issued an order directing a hearing to determine petitioner's § 190.50(5)(a) motion.  Both petitioner and Cohen testified at the hearing.  Narcissi testified that he told Cohen's secretary and left numerous messages for Cohen indicating that he wanted to testify before the grand jury.  Cohen testified that he spoke to Narcissi about the consequences of testifying before the grand jury and that Narcissi decided not to testify.  In his decision denying petitioner's motion, Judge Hanophy found "the testimony of Mr. David Cohen to be the trustworthy and credible version of the events as they occurred and [Narcissi's] testimony to be most incredible and unworthy of belief." (Mem. Den. Pet'r Mot., Mar. 31, 2000.)

***The Trial***

Petitioner proceeded to trial before the Honorable Robert C. McGann and a jury.

At trial, the State's evidence showed that on April 29, 1999, Narcissi and three other men decided to rob a drug dealer. Narcissi was sitting in the back seat of a car behind the driver, Hugh McCalla. Gregory Hinds was in the front seat on the passenger's side of the car, and Sean Grant was in the back seat behind Hinds. The car was parked on the corner of Liberty Avenue and Farmers Boulevard in Queens, New York. While in the car, in order to facilitate the robbery, Grant borrowed a .380 pistol from Hinds and petitioner borrowed a .357 Magnum from McCalla. McCalla also had a knife, which he carried on his person at all times.

Petitioner testified that he was in the car for the purposes of planning and committing a robbery. Petitioner admitted that he possessed a .357 Magnum, which he borrowed from McCalla, and which he intended to use to commit the robbery. According to the petitioner, during the course of planning the robbery in the car, a dispute that he and Grant had previously had with McCalla and Hinds arose again. Suddenly, during the dispute, Grant shot Hinds in the back of the head and fled. Narcissi testified that he then observed McCalla bending down and making movements like he was searching for something in the front seat. Narcissi believed McCalla was looking for his knife; fearing for his life, Narcissi shot McCalla in the base of the rear of his skull.

In his instructions to the jurors before they retired to deliberate, Judge McGann informed the jury of all the statutory elements of all the charges, including the weapons possession charges. (Trial Tr. 737-742, 750.) Judge McGann also instructed the jury that the defense of justification was not applicable to the weapons possession charges. *Id*. Narcissi did not object to any of these instructions. During deliberations, the jury sent a note to Judge McGann asking for the definition of the crimes of Criminal Possession of a Weapon in the Second and Third Degrees. In response to the note, Judge McGann reiterated all the statutory elements of those crimes. The jury acquitted

-3-

Narcissi of the murder and attempted murder counts, but convicted him of Criminal Possession of a Weapon in the Second Degree for possession of the .357 Magnum.  On June 14, 2001, Narcissi was sentenced to 15 years' incarceration.[2]

**Post-Trial Proceedings**

Narcissi appealed his judgment of conviction to the Appellate Division, Second Department, arguing that his sentence was excessive and should be reduced in the interest of justice.  On August 4, 2003, the Appellate Division affirmed the sentence without opinion.  *People v. Narcissi*, 307 A.D.2d 1076 (2d Dept. 2003).  Petitioner did not seek leave to appeal to the New York Court of Appeals.

Petitioner then filed a motion to vacate the judgment of conviction, in the Supreme Court, Queens County, pursuant to CPL § 440.10.  Petitioner argued that he had not received proper notice that Constable Bishop would testify at trial and that Bishop's testimony was false.  In an order dated September 13, 2004, Judge McGann denied petitioner's motion as procedurally barred because his two claims were on the record and could have been raised on direct appeal and as substantively without merit because petitioner did not offer any basis upon which Bishop's testimony should have been excluded.  (Order Den. Pet'r. Mot., Sept. 13, 2004.)  Judge Spolzino denied petitioner's application for permission to appeal the September 13, 2004 order to the Appellate Division on February 10, 2005.

While his post conviction motion was pending in state court, Narcissi filed a federal habeas corpus petition.  *Narcissi v. Phillips*, No. 04-CV-3220, Jul. 28, 2004.  On August 30, 2004, this court dismissed that petition, without prejudice, for failure to exhaust all available state court remedies.

---

[2]  Petitioner was not initially sentenced to any term of supervised release.

*Id*.

On February 17, 2005, petitioner sought a writ of error coram nobis from the Appellate Division, alleging ineffective assistance of appellate counsel. Narcissi argued that his appellate counsel was ineffective because appellate counsel failed to argue on direct appeal that the trial court erred by: (1) giving improper supplemental jury instructions as to Criminal Possession of a Weapon in the Second Degree; (2) permitting Constable Bishop to testify as to an inculpatory statement made by Narcissi; (3) allowing the prosecutor to amend the indictment to specify the type of weapon petitioner was charged with possessing; and (4) allowing the prosecutor to change his theory of the case with respect to petitioner's intended use of the gun. Petitioner's appellate counsel submitted an affidavit in response to the petition. In it, appellate counsel argued that he addressed all meritorious claims on appeal. Petitioner's motion was denied on June 27, 2005. *People v. Narcissi*, 19 A.D.3d 708 (2d Dep't 2005), *lv. denied*, 5 N.Y.3d 855 (2005).

Narcissi filed a second petition for a writ of habeas corpus, on November 26, 2005. *Narcissi v. Connolly*, No. 05-CV-5710, Nov. 26, 2005. Narcissi argued that he was denied effective assistance of appellate counsel. On January 3, 2006, this court denied Narcissi's second habeas petition as untimely. *Id*. Petitioner appealed the denial of his petition, and on July 25, 2006 the Court of Appeals for the Second Circuit issued a mandate vacating this court's order and remanding the case to this court to give Narcissi the opportunity to present arguments as to why his petition was not time-barred. *Narcissi v. Ercole*, No. 06-0707-PR, Feb. 14, 2006. Upon remand, this court determined that the additional evidence submitted by petitioner demonstrated that his petition was timely. *Narcissi v. Connolly*, No. 05-CV-5710, Nov. 26, 2005. On October 2, 2006 the court issued an order to show cause directing a response to the habeas petition.

-5-

On October 11, 2006, petitioner moved the Supreme Court, Queens County, pursuant to CPL § 440.20, to set aside his sentence, arguing that the Department of Corrections improperly added a term of five years' post-release supervision to his sentence that was neither ordered by the sentencing judge nor in his judgment and conviction. While his § 440.20 motion was pending, petitioner moved this court for, and respondent consented to, a stay of his federal habeas proceedings until the resolution of his CPL § 440.20 motion in state court. On December 26, 2006, this court granted petitioner's motion and directed the clerk to administratively close the case. *Id.*

Petitioner was resentenced on March 14, 2007. Judge McGann added a two and a half year term of post-release supervision to petitioner's sentence. The term of incarceration did not change. Petitioner filed a notice of appeal from his resentence, but never filed supporting documents, so the Appellate Division dismissed the appeal as abandoned. Narcissi then sought permission to reargue his appeal on the basis that he had new information, specifically that the newly-imposed term of post-release supervision made his sentence excessive. On September 25, 2007, the Appellate Division denied petitioner's motion. Petitioner's application for leave to appeal the denial to the New York Court of Appeals was denied on November 8, 2007.

Narcissi then filed a second petition for a writ of error coram nobis in the Appellate Division, arguing ineffective assistance of appellate counsel because appellate counsel failed to argue that trial counsel was ineffective for failing to preserve Narcissi's right to testify before the grand jury. Narcissi also argued that appellate counsel was ineffective because appellate counsel did not argue that the trial court erred by denying his motion to dismiss the indictment for violation of his right to testify before the grand jury. On June 17, 2008, the Appellate Division denied the second writ holding that Narcissi "failed to establish that he was denied effective assistance of appellate

-6-

counsel." *People v. Narcissi*, 19 A.D.3d 708 (2d Dep't 2005), *lv. denied,* 11 N.Y.3d 834 (2008).

Petitioner then filed an amended federal habeas corpus petition, adding a claim of denial of effective assistance of appellate counsel.  His amended petition contains claims arguing that appellate counsel was ineffective because he failed to raise the following errors on appeal: (1) the judge gave an improper supplemental jury instruction as to Criminal Possession of a Weapon in the Second Degree; (2) the trial judge permitted Constable Bishop to testify as to an inculpatory statement made by Narcissi; (3) the trial judge allowed the prosecutor to amend the indictment to specify the type of weapon petitioner was charged with possessing; (4) the trial judge allowed the prosecutor to change his theory of the case with respect to petitioner's intended use of the gun.  In addition, he claims appellate counsel was ineffective on appeal for failing to raise that (5) trial counsel was ineffective for failing to preserve his right to testify before the grand jury and that (6) the trial court erred by denying his motion to dismiss the indictment because he was deprived of his right to testify before the grand jury.

On March 22, 2010, Narcissi wrote to the court inquiring into the status of his amended habeas petition.  By order dated April 6, 2010, this court directed the respondent to file its opposition papers within 60 days.  On May 6, 2010, the court denied Narcissi's motion for entry of default against the respondent pursuant to Fed. R. Civ. P. 55(2)(d).  Narcissi appealed the denial to the Second Circuit on May 13.  The State filed its opposition papers to his amended habeas petition on June 1, 2010.  On December 6, 2010, the Second Circuit issued a Mandate denying petitioner's appeal stating that it lacked jurisdiction because the order from which Narcissi appealed was neither a final order nor a collateral order subject to immediate review.

## DISCUSSION

### *Standard of Review*

A federal court reviewing a state conviction may not grant a writ of habeas corpus to a state prisoner unless the petitioner's claim was adjudicated on the merits in state court, and the state court's determination of the merits (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court," or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Determination of factual issues made by a state court "shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

The Supreme Court has instructed that "clearly established federal law" "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). A state court decision is "contrary to . . . clearly established federal law," if it "contradicts the governing law set forth in [Supreme Court] cases or confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent." *Id*. at 405-06. A decision is "an unreasonable application" of established federal law if the state court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id*. at 407-08. In other words, "a federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly," but rather, "that

application must be unreasonable." *Id.* at 411.  The Court of Appeals for the Second Circuit has refined this standard, holding that "while some increment of incorrectness beyond error" is required, "the increment need not be great; otherwise habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

### *Ineffective Assistance of Counsel*

Narcissi argues that his appellate counsel was ineffective for failing to raise the six aforementioned errors on appeal.  To be granted relief for the ineffective assistance of appellate counsel, petitioner must show both that his appellate attorney's performance "fell below an objective standard of reasonableness" and that there is a "reasonable probability that but for counsel's error[s], the outcome would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984); *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994).  If petitioner fails to satisfy either prong of *Strickland*, petitioner is not entitled to habeas relief based on ineffective assistance of counsel.  *See Henry v. Poole*, 409 F.3d 48, 63 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 691 (an "error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment").

The performance prong of *Strickland* requires petitioner to overcome a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.  An appellate attorney does not have a duty to raise every colorable claim on appeal. *Jones v. Barnes*, 463 U.S. 745, 751-53 (1983).  "A petitioner may establish constitutionally inadequate performance only if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Bien v. Smith*, 546 F.Supp.2d 26, 54

(E.D.N.Y. 2008).

### 1. *Supplemental Jury Instruction*

The adequacy of a state court's jury charge is a matter of state law and is not ordinarily grounds for habeas relief.  In order to secure relief, petitioner must overcome "the strong interest in preserving the finality of judgments, as well as the interest in orderly trial procedure." *Henderson v. Kibbe*, 431 U.S. 145, 154 n. 13 (1977) (internal citations omitted).  "Before a federal court may overturn a conviction resulting from a state trial . . . it must be established not merely that the [challenged jury] instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment." *Cupp v. Naughten*, 414 U.S. 141, 146 (1973); *United States ex rel. Smith v. Montanye*, 505 F.2d 1355, 1359 (2d Cir. 1974).  The reviewing court's scrutiny is especially close where, as here, "no erroneous instruction was given," i.e., the trial court did not misstate the law.  *Henderson*, 431 U.S. at 155. Finally, a habeas court must evaluate the instruction "as the jury understood it, as part of the whole instruction, and indeed, as part of all the proceedings that were observed by the jury." *Smalls v. Batista*, 191 F.3d 272, 277 (2d Cir. 1999) (internal quotation marks and citation omitted).

Petitioner has not met his burden of establishing that the trial court's supplemental charge "so infected the entire trial that the resulting conviction violates due process." *Cupp*, 414 U.S. at 147. In both New York state and federal courts, trial court judges "ha[ve] considerable discretion in determining how to respond to communications indicating that the jury is experiencing confusion." *United States v. Parker*, 903 F.2d 91, 101 (2d Cir. 1990); *People v. Johnson*, 255 A.D.2d 337 (2d Dep't 1998).

Petitioner claims the jury should have been instructed that if it found him legally justified in

shooting the victim, the jury could not find him guilty of second degree weapon possession.  This claim is meritless.  The trial court's instructions were thorough and fair and did not prejudice Narcissi.  The court properly instructed the jury on the elements of each of the charged offenses.  The supplemental charge neither suggested that petitioner was guilty nor betrayed any bias on the part of the judge; it merely restated the elements of Criminal Possession of a Weapon in the Second and Third Degrees.  Petitioner cannot show that he was prejudiced by the supplemental instruction.  The instruction, which merely repeated the statutory definition of a "dangerous instrument," was not in error, and giving such an instruction was within the court's discretion.  *See United States v. Frampton*, 382 F.3d 213, 222 n. 8 (2d Cir. 2004).  In addition, overwhelming evidence connected petitioner to the robbery and the gun possession, including his own testimony, and supported the guilty verdict.  *See United States v. Cohen*, 427 F.3d 164, 172 (2d Cir. 2005).

The jury was not, and should not have been, instructed that, if it found the petitioner not guilty of the murder charges, then it must find him not guilty of criminal possession of a weapon.  Narcissi argues that an acquittal on the murder charge is logically inconsistent with the intent element of criminal possession of a weapon, which requires that a defendant have the "intent to use [the weapon] unlawfully against another."  *See* N.Y. Penal Law § 265.03(1) (2010).  He further argues that reversal is required because the criminal possession of a weapon count was based on the intent to commit a robbery, but he was not indicted for robbery.

Both arguments lack merit.  First, the jury charge was not inconsistent.  *See People v. Pons*, 68 N.Y.2d 264, 267-68 (1986) ("[I]t does not follow that because the defendant was justified in the actual shooting of the weapon under particular circumstances existing at that moment, he lacked the intent to use the weapon unlawfully during the continuum of time that he possessed it prior to the

-11-

shooting."). The jury could logically acquit the petitioner of murder and find him guilty of possessing the weapon. Second, one does not need to commit a robbery or attempt to commit a robbery in order to possess a weapon with the intent to do so. Indeed, one need not be indicted for robbery to be indicted for criminal possession of a weapon based on an intent to commit robbery. See *People v. Perez*, 45 N.Y.2d. 204, 210 (1978) ("[C]rimes of robbery and possession of a weapon constitute separately cognizable and statutorily proscribed wrongs."). In sum, appellate counsel was not ineffective for not raising this issue on appeal, and the Appellate Division's decision was not contrary to clearly established federal law.

### 2. Constable Bishop's Testimony

As mentioned above, petitioner was arrested in Toronto by Constable Bishop. At the trial, Constable Bishop testified about his arrest of Narcissi and that he read Narcissi the Canadian Charter. He also described statements Narcissi made to him before Narcissi's arrest. Petitioner claims that he was not given proper notice concerning the introduction of statements he made to Constable Bishop pursuant to CPL § 710.30 and that the prosecutor committed a *Rosario* violation by failing to provide Constable Bishop's written statements to the defense pursuant to CPL § 240.45(1)(a). *See People v. Rosario*, 9 N.Y.2d 286 (1961).

### A. Notice Pursuant to CPL § 710.30

CPL § 710.30 provides, "Whenever the people intend to offer at a trial . . . evidence of a statement made by a defendant to a public servant . . . notice must be served within fifteen days after arraignment and before trial." Petitioner's arguments regarding notice are without merit because none of the statements were admitted into evidence.

At trial, Constable Bishop testified about the comments petitioner made prior to his arrest.

-12-

Bishop stated:

> At that particular time I had a conversation with Mr. Narcissi and I said "Are you Narval Narcissi?"  He replied, "[N]o."  I said, "What's your name?"  He replied, "Richard Dawkins."  I said "What's your date of birth?"  He replied, "January 23rd, '78."

> I then had a further conversation with Mr. Narcissi and he continued to deny his identity.  At approximately five minutes to 11, I placed Mr. Narcissi under arrest for a warrant under the immigration Act for being illegal[y] in Canada.  I asked him if you [sic] understood and he answered, "yeah."

(Tr. 179.)  Defense counsel objected to the admission of these statements, and the court sustained the objection.  (Tr. 180, 194-95.)  Constable Bishop's comments were stricken from the record, but defense counsel asked the court not to give a curative instruction because he thought it would only highlight the testimony for the jury.  (Tr. 194-95.)

Since the court sustained defense counsel's objection, Narcissi's only argument (reading his petition liberally) could be that appellate counsel was ineffective for failing to argue that trial counsel was ineffective for not asking for a curative instruction.  Trial counsel's strategy to not highlight potentially damaging testimony for the jury was reasonably designed to effectuate Narcissi's interests, and petitioner has not shown that he was prejudiced by trial counsel's action.  *See Quinones v. Miller*, 2003 WL 21276429 at *50 n. 78 (S.D.N.Y. 2000) (describing abundant case law in which not objecting or not asking for a curative instruction was deemed reasonable because it would emphasize testimony for the jury).  Since the first prong of the *Strickland* test was not met, trial counsel was not ineffective and appellate counsel was not ineffective for not raising this issue.

The trial court also excluded petitioner's post-arrest statements to Constable Bishop.  (Tr. at 180-84.)  Therefore, appellate counsel cannot be ineffective for failing to raise the issue of notice under CPL § 710.30 on appeal, and the Appellate Division did not unreasonably apply the law in

-13-

reaching the same conclusion.

### B. CPL § 240.45(1)(a) Rosario Violation

The prosecution adequately turned *Rosario* material over to the defense even though the disclosure occurred later than is required by CPL § 240.45(1)(a). When there is "not a complete failure to disclose the material but rather a delay in its disclosure . . . reversal is not required unless the delay substantially prejudiced the defendant." *People v. Banch*, 80 N.Y.2d 610, 617 (1992). Moreover, if the defendant expressly agreed to the remedy fashioned by the court, the argument that the prosecution's late *Rosario* disclosure prevented a fair trial is not preserved for appellate review. *People v. Alvarez*, 239 A.D.2d 263 (1st Dep't 1997).

Here, the court took a recess to allow review of the late *Rosario* material to defense counsel's satisfaction. (Trial Tr. 188-190.) Counsel expressly agreed to the remedy, thus the issue was not preserved for appellate review, and Narcissi has not shown how he was prejudiced by the delay. Appellate counsel, therefore, cannot be held ineffective for failing to raise the issue on appeal, and the Appellate Division reasonably applied the law.

### 3. Amending the Indictment

Petitioner argues that appellate counsel should have challenged the trial court's erroneous ruling allowing the prosecution to amend the indictment to specify the types of guns petitioner was charged with possessing. CPL § 200.70(1) permits amendment of an indictment, at any time before or during trial, as to "matters of form, time, place, names of persons and the like, when such an amendment does not change the theory or theories of the prosecution . . . or otherwise tend to prejudice the defendant."

The original indictment included two counts of Criminal Possession of a Weapon in the

-14-

Second Degree and two counts of Criminal Possession of a Weapon in the Third Degree. (Indictment

counts 4-7.)  The indictment referred to each weapon as "a pistol or revolver."  The Bill of

Particulars clarified that the defendant was charged with the possession of two guns.  (Bill of

Particulars at 2.)  At trial, it became apparent that one gun was a .357 Magnum revolver and the other

was a .380 automatic pistol.  (Tr. 504-05.)  The court granted the prosecution's request that the

weapon possession counts be amended to identify the .357 Magnum and the .380 pistol.  (Tr.

601-604.)

     Prosecutors may amend an indictment to specify the weapon used as long as the defendant

does not suffer any prejudice by the amendment.  *See e.g. People v. Logan*, 19 A.D.3d 939, 942 (3d

Dep't 2005); *People v. Jackson*, 232 A.D.2d 193, 194 (1st Dep't 1996); *People v. Hood*, 194 A.D.2d

556, 557 (2d Dep't 1993).  Here, the indictment was amended to specify the two weapons which the

defendant was charged with illegally possessing.  Narcissi "did not make an adequate showing that

he was prejudiced by the amendments."  *Logan*, 19 A.D.3d at 942.  Nor was petitioner prejudiced

by the inclusion of both guns in the indictment, as the sole count on which he was convicted was

possessing the .357 Magnum which he testified he did, in fact, possess in order to carry out the

robbery.  Therefore, the trial court did not err in allowing the amendment to the indictment, and

appellate counsel was not ineffective for failing to raise this issue on appeal.

### 4. *Prosecutor's Theory of the Case*

     Reading the pro se petition liberally, petitioner argues that the theory of the case changed

from possession of a weapon with the intent to commit murder to possession of a weapon with the

intent to commit robbery.  Narcissi argues that the indictment, limited by the Bill of Particulars,

allowed the prosecution to argue only that he possessed the weapon with the intent to commit

-15-

murder.

"[W]hen an indictment alleges facts that are extraneous or immaterial to the charges or beyond what is necessary to support the charges, or when factual allegations are made in the alternative, the People need not prove more than those factual allegations necessary to support a conviction." *People v. Grega*, 72 N.Y.2d 489, 497 (1998). As an exception to this general rule, the prosecution may not change the theory of the case when it presents evidence which affirmatively disproves the facts contained the indictment. *Id*. In *People v. Roberts*, consolidated into *Grega*, the indictment stated that the defendant struck the victim, causing her death, and the prosecution later argued at trial the defendant strangled the victim. *Id*. at 498. Because death by strangulation affirmatively disproved the death by a strike, the court affirmed the lower court's reversal of the defendant's conviction. *Id*. at 499-500.

In this case, although intending to use the weapon illegally is an element of second degree weapon possession, no particular manner of unlawful use is required. N.Y. Penal Law § 265.03 (2010). The Bill of Particulars stated that the defendant was in the car "ostensibly to commit a robbery." (Bill of Particulars at 2.)

The prosecution's argument that the defendant possessed the weapon to commit a robbery does not affirmatively disprove that he possessed the weapon to commit a murder. Unlike a death caused by either strangulation or a strike, a person can possess a gun and intend to use it for multiple reasons simultaneously. In this case, the prosecution permissibly argued that the defendant intended to use the weapon for either a murder or a robbery. (Trial Tr. 649, 681.) Moreover, the petitioner himself testified at trial that he intended to commit a robbery until he shot McCalla and fled. (Trial Tr. at 504.)

-16-

Since the prosecution's argument was permissible, appellate counsel cannot be held ineffective for failing to raise the issue on appeal. Thus, the Appellate Division reasonably applied the law.

### 5. *Petitioner's Right to Testify Before the Grand Jury*

Narcissi claims appellate counsel should have argued that trial counsel was ineffective because he did not preserve Narcissi's statutory right to testify before the grand jury. *See* N.Y. Crim. Proc. § 190.50 (McKinney 2010). Narcissi's ineffectiveness claim concerning his right to testify before the grand jury fails. Narcissi has not presented clear and convincing evidence that Judge Hanophy erred when he credited Cohen's version of events as opposed to Narcissi's version of events. Specifically, Judge Hanophy determined that Cohen and Narcissi spoke about grand jury testimony and thereafter petitioner decided to waive his right to testify before the grand jury. Moreover, "[d]efense counsel's purported failure to effectuate defendant's right to testify before the grand jury does not, per se, amount to ineffective assistance of counsel particularly where, as here, defendant has failed to demonstrate the necessary absence of strategic or other legitimate explanations for counsel's actions." *People v. Mejias*, 293 A.D.2d 819, 820 (3d Dep't 2002)(internal citations and quotation marks omitted). Appellate counsel was not ineffective for failing to raise this issue on appeal, and the claim was properly addressed by the Appellate Division.

### 6. *Trial Court's Denial of Petitioner's Motion to Dismiss the Indictment*

Narcissi argues that the trial court should have dismissed his indictment because he was deprived of his right to testify before the grand jury. But, as discussed above, Judge Hanophy determined that petitioner discussed his right to testify before the grand jury with his counsel and knowingly decided not to testify. Petitioner was not deprived of his right to testify, but merely made

-17-

a strategic decision after speaking with his attorney not to exercise that right.  Therefore, there was

no basis on which to dismiss petitioner's indictment.  Appellate counsel was not ineffective for

failing to raise this issue on appeal, and the Appellate Division's denial of relief was not contrary

to clearly established federal law.

## CONCLUSION

For the reasons set forth above, the petition for a writ of habeas corpus is denied.  Because

petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of

appealability will not issue.  28 U.S.C. § 2253.

SO ORDERED.

/s/ Nina Gershon (electronically signed)
NINA GERSHON
United States District Judge

Dated: Brooklyn, New York
        April 23, 2012

-18-